**LAW FIRM OF HAROLD GREENBERG**
2263 South Harvard Boulevard
Los Angeles, CA 90018-2143
Telephone: (323) 732-9536
Facsimile: (323) 732-0803

Harold Greenberg, Esq. (SBN: 40827)
Hedy Ghavidel, Esq. (SBN: 302335)

Attorneys for Plaintiff HAROLD GREENBERG

*Law Firm of Harold Greenberg*
*2263 S. Harvard Boulevard*
*Los Angeles, California 90018-2143*

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SANFRANCISCO DIVISION

| | |
|---|---|
| In re | ) Case No. 13-30477 – HLB |
| | ) |
| MONICA HUJAZI, | ) **CHAPTER 7** |
| | ) |
| Debtor, | ) |
| | ) |
| | ) **COMPLAINT FOR DECLARATORY** |
| | ) **RELIEF** |
| HAROLD GREENBERG, an individual, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Adv. Proc. No. _____ |
| | ) |
| MONICA H. HUJAZI, an individual; and | ) |
| JACQUELINE MARIE ZUERCHER, | ) |
| aka/Jacquelyne Zuercher, an individual, | ) |
| | ) |
| Defendants. | ) |

Plaintiff Harold Greenberg complaining of defendants Monica H. Hujazi and Jacqueline Marie Zuercher, alleges as follows:

### JURISDICTION AND VENUE

1.    The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334, as this is a core proceeding under 28 U.S.C. § 157(b)(1), (2)(K) and (2)(H). Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a), in that the instant proceeding is

-1-
**COMPLAINT FOR DECLARATORY RELIEF**

Law Firm of Harold Greenberg
2263 S. Harvard Boulevard
Los Angeles, California 90018-2143

1    related to the Debtors' pending case under Title 11, Chapter 7 of the United States Code

2    ("Bankruptcy Code" or "Code"; unless stated otherwise, all statutory references made herein are to

3    the Bankruptcy Code). To the extent this Court may be determined not to have jurisdiction to make

4    a final determination of all the allegations herein stated, the Court nevertheless has jurisdiction to

5    preside over all proceedings in this Adversary Proceeding, including entering findings of fact and

6    conclusions of law, prior to entry of a final ruling thereon. Plaintiff consents to the entry of a final

7    judgment or order by the Bankruptcy Court in this proceeding.

8         2.    The above-captioned bankruptcy case ("Bankruptcy Case") was commenced on

9    March 1, 2013 ("Petition Date"), by involuntary Petition.

10        3.    On or about November 30, 2015, Order for Relief was entered. Thereafter, Jeanina M.

11   Hoskins was appointed as trustee of the Monica Hujazi Estate ("Trustee").

12        4.    Plaintiff Harold Greenberg ("Plaintiff") is an Unsecured Creditor in the Bankruptcy

13   Case, acting on behalf of himself and for the benefit of all other and similarly situated Unsecured

14   Creditors [1] ("Unsecured Creditors") of the Monica Hujazi Estate ("Estate").

15        5.    Plaintiff is informed and believes, and based thereon alleges, that Defendant Monica

16   H. Hujazi ("Debtor" or "Defendant Hujazi"), is an individual, who resides in the County of San

17   Mateo and the State of California.

18        6.    Plaintiff is informed and believes, and based thereon alleges, that Defendant

19   Jacqueline Marie Zuercher ("Defendant Zuercher" and collectively with Debtor "Defendants"), also

20   known as Jacquelyn Zuercher, is an individual, who resides in the County of San Mateo and the

21   State of California.

22        7.    This Adversary Proceeding is brought pursuant Bankruptcy Code Section 105 and

23   Bankruptcy Rule 3001 and Bankruptcy Rules 7001(2) and 7001(9), for Declaratory Relief, to

24   determine the nature and extent of the Estate's interest in a certain motor vehicle, the 2006

25   Mercedes - Benz SLR McLaren ("McLaren").   The McLaren is a "vehicle" as defined in the

26   California Vehicle Code at Section 670.

27   _____

28   [1] Other similarly situated unsecured creditors are those creditors who filed Joinders to both "Harold
     Greenberg's Opposition to Compromise Controversy with the Debtor" (*Id.* Dkt. 532 and 532-1) and
     "Objection and Request for Hearing" filed by Recoverex (*Id.* Dkt. 521, 521-1 and 521-2).

-2-

**COMPLAINT FOR DECLARATORY RELIEF**

Law Firm of Harold Greenberg
2263 S. Harvard Boulevard
Los Angeles, California 90018-2143

## GENERAL ALLEGATIONS

8.    Plaintiff is informed and believes, and based thereon alleges that on or about September 6, 2007, Debtor entered into a "Motor Vehicle Lease Agreement" with the Manhattan Leasing Enterprises Ltd. for the purchase of a 2006 Mercedes - Benz SLR McLaren, VIN No. WDDAJ76FX6M001024, License Plate No. 5ZYZ696 ("McLaren") for $355,000, and a total cost of $470,466.01. Attached as "Exhibit A" is what Plaintiff believes to be a true and accurate copy of the Motor Vehicle Lease Agreement.

9.    At the time of the Debtor's September 2007 agreement to purchase the McLaren it had a beginning mileage of 3,669. Upon information and belief, the McLaren has a current mileage of approximately 7,000, and its fair market value is more than $250,000 since it is a collectible and rare luxury vehicle with very low mileage.

10.    Debtor has alleged that she, does not have an interest in the McLaren (See Dkt. 499, at p. 2, lines 4-7, and p. 4, lines 10-13, 27-18, and p.5, lines. 1-2), and that she gifted the McLaren to Defendant Zuercher for her 16th Birthday during the week of April 2nd 2013.

11.    Plaintiff is informed and believes, and based thereon alleges, that Defendant Zuercher is the sole child of Debtor, born on April 2, 1997; and that, at such time as Debtor purported to make a gift of the McLaren to Defendant Zuercher, Defendant Zuercher was not even licensed to operate a motor vehicle in the State of California. Attached as "Exhibit B" is a true and accurate copy of Defendant Zuercher's certified Birth Certificate.

12.    Plaintiff is informed and believes, and based thereon alleges, that Defendant Zuercher was a minor under California law during 2013 and that Defendant Zuercher lacked the capacity to enter into contracts and/or take an assignment of the Motor Vehicle Lease Agreement in calendar year 2013; and that Defendant Zuercher similarly lacked capacity at all times thereafter until Defendant Zuercher reached the age of majority.

13.    Plaintiff is informed and believes, and based thereon, further alleges that any purported gift, transfer or conveyance of the McLaren by the Debtor to Defendant Zuercher at any time on or after April 1, 2013 is void and a nullity.

//

-3-

**COMPLAINT FOR DECLARATORY RELIEF**

Law Firm of Harold Greenberg
2263 S. Harvard Boulevard
Los Angeles, California 90018-2143

14.     Plaintiff is further informed and believes, and based thereon alleges, that any purported transfer or assignment of the Motor Vehicle Lease Agreement (or any rights thereunder) to Defendant Zuercher, or any purported assumption of such rights by Defendant Zuercher, at any time in 2013 was void and a nullity.

15.     Plaintiff is informed and believes, and based thereon alleges, Debtor, in her Schedules filed in January 21, 2016 (*Id.* Dkt. 384, 384-1 and 384-2), did not disclose any interest in the McLaren.  Further, Debtor did not disclose any purported transfer of the McLaren to Defendant Zuercher.  Nor did the Debtor disclose any pre-petition or post-petition payments (to Manhattan Leasing) that were made toward the purchase of the McLaren.

16.     However, from and after September 2007, and up until the time of the Involuntary Petition in this case, Plaintiff is informed and believes that the Debtor had paid (or caused to be paid) to Manhattan Leasing Enterprises over $435,000 (Four Hundred Thirty-Five Thousand Dollars) toward the purchase of the McLaren.

17.     As of the date of the Involuntary Petition in this case, Debtor had not yet completed the purchase of the McLaren under the Motor Vehicle Lease Agreement; but the Debtor nonetheless held certain rights to complete the purchase of the McLaren.

18.     Plaintiff is informed and believes, and based thereon alleges, that the purchase of the McLaren was not accomplished until <u>after</u> the Petition Date; that the Debtor did not hold any right to transfer or assign her interest in the McLaren until well <u>after</u> the Petition Date; and that the purchase of the McLaren was completed (after the Petition Date) using funds that were, at least in part, amongst the assets of a California limited liability company that is wholly owned by the Estate.  Attached as "Exhibit C" is a true and accurate copy of a March 2013 record of Wire Fund transfer made from the account of S.F. Corners, LLC to Manhattan Leasing Enterprises Ltd.

19.     Plaintiff is informed and believes that Manhattan Leasing Enterprises, Ltd. did not release its interest in the McLaren until on or about May 16, 2013.

20.     Plaintiff is informed and believes, and based thereon alleges that, at all times relevant here, the Debtor had possession of, and continues to possess the McLaren; and that the Debtor,

-4-
**COMPLAINT FOR DECLARATORY RELIEF**

perhaps with Defendant Zuercher, has caused the McLaren to remain under the Debtor's control and to be garaged in Northern California.

21. Plaintiff is informed and believes, and based thereon alleges, that the Estate has an interest in the McLaren based, in part, on the following chronological documentation:

   a. **09/06/2007**: Debtor purchased the McLaren. (See Exhibit A)

   b. **03/02/2007**: Registration Information. Attached as "Exhibit D-1" is a true and accurate copy of the 2007 Registration Information.

   c. **03/02/2009**: Registration Card. Attached as "Exhibit D-2" is a true and accurate copy of the 2009 Registration Card.

   d. **03/02/2011**: DMV Notice. Attached as "Exhibit D-3" is a true and accurate copy of the 2011 DMV Notice.

   e. **11/09/2011**: Safeco Insurance Card. Attached as "Exhibit D-4" is a true and accurate copy of the 2011 Safeco Insurance Card.

   f. **03/02/2012**: DMV Notice. Attached as "Exhibit D-5" is a true and accurate copy of the 2012 DMV Notice.

   g. **02/14/2013**: Payoff Letter demand from Manhattan Leasing Enterprises Ltd. Attached as "Exhibit E" is a true and accurate copy of the Payoff Letter from Manhattan Leasing Enterprises Ltd.

   h. **03/01/2013**: Petition Date.

   i. **03/07/2013**: $13,400 payment to Manhattan Leasing by S.F. Corners, LLC. made by Debtor. (See Exhibit C).

   j. **04/02/2013**: Defendant Zeurcher's 16th Birthday. (See Exhibit B).

   k. **05/16/2013**:  Release of liability filed with California DMV.

//
//
//
//

**COMPLAINT FOR DECLARATORY RELIEF**

Law Firm of Harold Greenberg
2263 S. Harvard Boulevard
Los Angeles, California 90018-2143

**FIRST CLAIM FOR DECLARATORY RELIEF**

[11 U.S.C. §§ 105, Bankr. Rules 3001, 7001(2) and 7001(9)]

(Brought by Plaintiff Harold Greenberg against Defendants Monica H. Hujazi and Jacqueline Marie Zuercher)

22. Plaintiff realleges each and every allegation contained in paragraphs 1 through 21 of this Adversary Complaint, inclusive, as though fully set forth herein.

23. Plaintiff is informed and believes, and based thereon alleges, that any purported transfer of the McLaren to Defendant Zuercher was and is void; and that the Estate holds 100% interest in the McLaren.

24. Accordingly, pursuant to the Court's authority conferred by 11 U.S.C. §§ 105, Bankruptcy Rule 3001 and Bankruptcy Rules 7001(2) and 7001(9), this Court should declare that the Estate holds a complete unencumbered interest in the McLaren and that any competing claims or interests asserted by either of the Defendants are subordinate to the Estate's interest in the McLaren.

WHEREFORE, as enunciated below, the Plaintiff prays for judgment against Debtor and Defendant Zeurcher on the First Claim for Declaratory Relief;

Plaintiff prays for a declaratory judgment of this Court which determines the nature and extent of the Estate's interest in the McLaren and that otherwise declares as follows:

1. That the McLaren is an asset of the Estate;

2. That Defendant Zeurcher does not have an interest in the McLaren;

3. That any purported transfer of the McLaren to Defendant Zeurcher is void;

4. That the Trustee is entitled to possession of the McLaren; and

5. For such other and further relief as this Court deems just and proper.

DATED: August 21, 2017          **LAW FIRM OF HAROLD GREENBERG**

HEDY GHAVIDEL
Attorneys for Plaintiff,
HAROLD GREENBERG

-6-
**COMPLAINT FOR DECLARATORY RELIEF**

*Law Firm of Harold Greenberg*
*2263 S. Harvard Boulevard*
*Los Angeles, California 90018-2143*

# EXHIBIT A

# MOTOR VEHICLE LEASE AGREEMENT

| Lease Date: 09/06/07 | Lessor: Manhattan Leasing Ent., Ltd. 20 East Sunrise Highway Suite 200 Valley Stream, 115811257 | Lessee: Monica H. Hujazi 1016 San Raymundo Hillsborough, CA 94010 |
|---|---|---|

## 1. DESCRIPTION OF LEASED VEHICLE:  ☐ New  ☒ Used

| Make: MERCEDES BENZ | Year: 2006 | Model: SLR MCLAREN | Body Style: |
|---|---|---|---|
| VIN: WDDAJ76FX6M001024 | Lic. No. (if known): | | Beginning Mileage: 3,669 |

Additional Description:

## 2. DESCRIPTION OF TRADE-IN (if applicable) Make _____ Year _____

Model _____ Agreed Upon Value of Trade-In $ _____

The amount you owe on the Trade-in is greater than the Agreed Upon Value of Trade-In. The remaining amount you owe ("Outstanding Prior Credit or  Lease Balance on Trade-In") is $ _____

**3. DEFINITIONS** "You", "your" and "Lessee" mean each person or legal entity, jointly and severally, who signs this Lease agreement as the "Lessee." "We", "our," "us" and "Lessor" mean the Lessor who signs this Lease agreement and its successors and assigns. Disclosures in this Lease are made on behalf of the Lessor and its assignee.

**4. AGREEMENT TO LEASE:** You agree to lease the motor vehicle described in section 1 ("Vehicle") from us according to the terms included on all four pages of this Lease agreement ("Lease"). The Federal Consumer Leasing Act Disclosures are also contract terms of this Lease agreement

*Estimates based on current sales and use tax rates.

### GAP LIABILITY NOTICE
In the event of theft or damage to the vehicle that results in total loss, there may be a GAP between the amount due upon early termination and the proceeds of your insurance settlement and deductible. THIS LEASE PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. Optional coverage for the GAP amount may be offered for an additional price.

### THERE IS NO COOLING OFF PERIOD
California law does not provide for a "cooling off" or other cancellation period for vehicle leases. Therefore, you cannot later cancel this Lease simply because you change your mind, decided the vehicle costs too much, or wish you had acquired a different vehicle. You may cancel this lease only with the agreement of the lessor or for legal cause, such as fraud.

## Federal Consumer Leasing Act Disclosures

| 5. Amount Due at Leasing Signing or Delivery (Itemized Below)**: $ 123,525.41 | 6. Monthly Payments: Your first Monthly Payment of $11,951.41 is due on 09/06/07 , followed by 58 payments of 5,975.70 due on the 06 day of each month beginning October 2007 . The total of your Monthly Payments is $ 358,542.01 . | 7. Other Charges (not part of your Monthly Payments): Disposition Fee (if you do not purchase the Vehicle) $ 350.00 / 0.00 / 0.00 / 0.00 Total $ 350.00 | 8. Total of Payments (The total amount you will have paid by the end of the Lease): $ 470,466.01 |
|---|---|---|---|

### 9.**Itemization of Amount Due at Lease Signing or Delivery*

| (a) Amount Due At Lease Signing or Delivery: | | (b) How the Amount Due at Lease Signing or Delivery Will Be Paid: | |
|---|---|---|---|
| (1) Capitalized Cost Reduction | 100,000.00 | (1) Net trade-in allowance | 0.00 |
| (2) First Monthly Payment | 11,040.56 | (2) Rebates and noncash credits | 0.00 |
| (3) Refundable Security Deposit | 0.00 | (3) Amount to be paid in cash | 123,525.41 |
| (4) First Year's License, Tax & Registration Fees | 2,429.00 | (4) | |
| (5) Document Preparation Fee (not governmental fee) | 895.00 | Total | 123,525.41 |
| (6) California Tire Fee (paid to State)* | | | |
| (7) Optional DMV Electronic Filing Fee | | | |
| (8) Sales Tax - Initial Pmt | 910.85 | | |
| (9) Sales Tax - Down Pmt | 8,250.00 | | |
| (10) | | | |
| Total | 123,525.41 | | |

### 10.* Your Monthly Payment is Determined as Shown Below:

| | | |
|---|---|---|
| (a) Gross Capitalized Cost. The agreed upon value of the Vehicle ($ 355,000.00 ) and any items you pay over the Lease Term (such as service contracts, insurance and any outstanding prior credit or lease balance)........ $ | 355,000.00 | |
| (b) Capitalized Cost Reduction. The amount of any net trade-in allowance, rebate, noncash credit or cash you pay that reduces the Gross Capitalized Cost........ | 100,000.00 | |
| (c) Adjusted Capitalized Cost. The amount used in calculating your Base Monthly Payment........ $ | 255,000.00 | |
| (d) Residual Value. The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment ........ | 101.00 | |
| (e) Depreciation and Any Amortized Amounts. The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term........ | 254,899.00 | |
| (f) Rent Charge. The amount charged in addition to the Depreciation and any amortized amounts........ | 76,317.80 | |
| (g) Total of Base Monthly Payments. The Depreciation and Any Amortized Amounts plus the Rent Charge........ | 331,216.80 | |
| (h) Lease Payments. The number of payments in your Lease........ | 60 | |
| (i) Base Monthly Payment........ | 5,520.28 | |
| (j) Monthly Sales/Use Tax........ | 455.42 | |
| (k) _____ | | |
| (l) _____ | | |
| (m) Total Monthly Payment........ $ | 5,975.70 | |
| Rent and Other Charges.  The total amount of rent and other charges imposed in connection with your lease. ........ $ | 470,466.01 | |

**11. Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

**12. Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 5,000 miles per year at the rate of 1.50 per mile (EXCESS MILEAGE CHARGE).

**13. Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the Lease Term for $ 101.00 plus any additional costs and fees.

(OPTION RIDER ATTACHED AND INCORPORATED BY REFERENCE)  See Option Rider

This purchase option price does not include official fees such as for taxes, tags, licenses and registration, which you will also be required to pay. This option is available only if we have not already declared this Lease to be in default. You must give us at least 30 days prior notice of your intent to purchase the Vehicle.

**14. Other Important Terms.** See your Lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance and any security interest, if applicable.

"e" means estimate

Page 1

Case: 17-03054   Doc# 1   Filed: 08/22/17   Entered: 08/22/17 16:47:32   Page 8 of 23

16. **ITEMIZATION OF GROSS CAPITALIZED COSTS**

| | | Insurance Premiums | |
|---|---|---|---|
| a. Agreed upon Value of the Vehicle if Equipped at Time of Signing Lease | $ 355,000.00 | g. Initial Title, License and Registration Fee | $ |
| b. Sales Excise Use Tax on Vehicle | $ | h. Document Preparation Fee (not a governmental fee) | $ |
| c. Outstanding Prior Credit or Lease Balance of Trade-In | $ N/A | i. California Tire Tax | $ |
| d. Agreed Upon Value and Description of Each Accessory and Item of Optional Equipment the Lessor Agrees to Add to the Vehicle After Signing the Lease | | j. Optional Debt Cancellation Agreement | $ |
| e. _____ | $ | | |
| e. _____ | $ | **Total GROSS CAPITALIZED COST** (sum of items a. through j.) | $ 355,000.00 |
| f. Optional Service Contract | $ N/A | | |

**Trade-In, Turn-In, and Other Individualized Agreements**

17. **GENERAL TERMS:** You agree that the law of the state of California will govern this Lease, unless prohibited. If any part of this lease cannot be enforced the rest of the Lease will still be enforceable

18. **VEHICLE USE:** You agree: (a) to allow the Vehicle only to be operated by licensed drivers for lawful purposes and in a lawful manner; (b) to operate the Vehicle only as recommended by the manufacturer; (c) not to use the Vehicle as a taxi or for other public or private hire or delivery; (d) not to use the Vehicle in a way that causes the cancellation or suspension of any warranty, insurance or other similar Vehicle protection agreement; (e) not to take the Vehicle out of the state where you reside for more than 30 consecutive days without our prior written approval; (f) not to take the Vehicle out of the United States for any period of time without prior written approval

19. **MAINTENANCE AND OPERATING COSTS:** You agree to keep the Vehicle in the same condition as when you received it, except for reasonable wear and mileage. You agree to service and maintain it as recommended by the manufacturer and as needed to keep it in good operating condition. You also agree to maintain the Vehicle so that any warranties or similar agreements remain effective and so that it passes all inspections required by law. You are responsible for paying all costs of the Vehicle's service, repair and maintenance and all the costs of its operation, including the costs of gas, oil, parking, storage, violations, etc. You agree to make the Vehicle available to us for inspection during the Lease Term at any reasonable time and location that we request

20. **TITLING, OFFICIAL FEES AND TAXES:** You understand and agree that this agreement is a lease only. We own the Vehicle, and it will be titled in our name or in the name of our assignee. You have no ownership interests in the Vehicle except for any future options to purchase provided in this Lease

You agree to keep the Vehicle registered and have it inspected as required by law during the Lease Term. You agree to pay all title registration, license, sales, use, excise, personal property, ad valorem, inspection, testing and all other taxes, fees and charges imposed by government authorities in connection with the Vehicle and this Lease during the Lease Term, except our income taxes. If such amounts are assessed for a period during the Lease Term, you will pay them even if they become due after the Lease Term. We may, at our discretion, determine the timing and procedures for payment of these amounts. You will promptly pay these amounts as they come due unless otherwise indicated in this Lease. The actual total of official fees and taxes that you pay may be higher or lower than our estimate (section 33) depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed.

21. **INDEMNITY:** To the fullest extent permitted by law and unless otherwise prohibited by law, you agree to indemnify and hold us harmless and our successors and assigns from all liability, claims, losses, demands, damages of all kinds, expenses (including reasonable legal fees and expenses, unless prohibited), fines and penalties we suffer or incur resulting from the possession, operation, condition, maintenance or use of the Vehicle during the Lease Term.

You realize that under this indemnity agreement you have agreed to indemnify us for strict liability claims

22. **ASSIGNMENTS AND TRANSFERS:** We may sell, assign or in any other way transfer our rights and responsibilities in the Vehicle and this Lease. If we sell or assign our rights to this Lease or to the Vehicle, we will notify you in writing if you are required to make payments to someone else. We will send you notice by first class mail to your address given in this Lease or to your last known address as reflected in our records.

YOU WILL NOT SUBLEASE THE VEHICLE, ASSIGN, PLEDGE OR PERMIT A SECURITY INTEREST TO BE CREATED IN, OR IN ANY OTHER WAY TRANSFER YOUR INTERESTS OR RESPONSIBILITIES IN THE VEHICLE AND IN THIS LEASE. We may, at our discretion, give you permission to make a transfer that is otherwise prohibited. Such permission must be given in writing prior to any transfer.

23 **NOTICES:** Unless otherwise required by law, you agree that any notice required to be given to you about the intended repossession, sale or disposition of the Vehicle will be reasonable and sufficient if it is sent by first class mail, addressed to you at the address given in this Lease or to your last known address as reflected in our records and mailed to you at least 10 days before the intended action. YOU WILL NOTIFY US IN WRITING WITHIN 30 DAYS OF ANY CHANGE IN YOUR NAME OR ADDRESS

24. **SECURITY DEPOSIT:** If included in the itemized Amount Due At Lease Signing or Delivery section (section 9(a)(3)), you will give us a refundable Security Deposit in the amount indicated. It may be used to pay any amount that you do not pay when due. After all your obligations are paid under this Lease, we will return any remaining amount to you. Unless prohibited by law, you will not be entitled to interest on your Security Deposit or to any other benefit, increase or profits that accrue to us as a result of holding the Security Deposit

25. **DAMAGE TO THE VEHICLE AND INSURANCE CLAIMS:** You will notify us in writing immediately after any accident, collision, injury or any other loss upon receiving notice of any demand, claim or suit involving the Vehicle in any way. You agree to fully cooperate with us and with your insurer in any investigation, suit or other action resulting from the use or control of the Vehicle.

You agree to repair or compensate us for any loss or damage to the Vehicle that occurs during this Lease even if you did not cause the loss or damage or were not at fault for it. If the Vehicle is damaged, we will decide if it is repairable and if it should be repaired. If the Vehicle is repaired, you will apply to the costs of repair any insurance proceeds you receive for its loss or damage. You understand that you must pay for any loss or damage that is not paid by insurance proceeds. You also must keep making any payments as they come due during this Lease even if the Vehicle is damaged or unusable for a period of time. The THEFT, LOSS OR UNREPAIRABLE DAMAGE section describes what happens if we decide that the Vehicle cannot or should not be repaired.

26. **THEFT, LOSS OR UNREPAIRABLE DAMAGE:** If the Vehicle is stolen and not recovered, or is lost or destroyed, or is damaged and we determine that it cannot or should not be repaired, then we will decide whether to continue or terminate this Lease. If it is continued, you accept a reasonable substitute vehicle of similar value, condition, mileage and accessories to replace the original Vehicle. If we terminate the Lease under this section, the event will be treated as an early termination and you will be required to pay the amounts described in the EARLY TERMINATION section. If we terminate the Lease under this section, you will promptly pay to us all insurance and other proceeds that you receive for its damage or loss and will promptly deliver the Vehicle to us or as we direct. You will also promptly give to us all premium refunds paid on Required Insurance up to the amount you still owe us.

27. **DEFAULT:** You will be in default on this Lease if anyone of the following occurs (except as prohibited by law):
(a) You fail to make any payment when it is due;
(b) You fail or any guarantor fails to perform any material obligation undertaken in this Lease or any agreement made in connection with this Lease;
(c) You die, are declared incompetent, become insolvent or a bankruptcy petition is filed against you;
(d) Any guarantor of this Lease dies, is declared incompetent, become insolvent or a bankruptcy petition is filed against you;
(e) You make any written statement or provide any financial or other material information to us that is untrue or inaccurate at the time it is provided;
(f) The Vehicle is seized, confiscated or levied upon by legal or governmental process;
(g) Your driver's license expires or is suspended, revoked, canceled or is otherwise restricted;
(h) You fail to provide the Required Insurance on the Vehicle or fail to provide proof of such coverage after we request it;
(i) Anything else happens that creates a default according to applicable law.

If this Lease is in default, we may exercise our remedies against any or all Lessees

28. **REMEDIES:** If this Lease is in default, we may take anyone or more of the following actions. If the law requires us to do so, we will give you notice and wait any period of time required before taking these actions. We may:

(a) Terminate this Lease and your rights to use the Vehicle and proceed under the EARLY TERMINATION section;
(b) Take any reasonable action to correct your default or to prevent any loss (including, for example, purchasing insurance that you agreed to provide). Any amount we pay will be added to the amount you owe us and will be immediately due;
(c) Require you to return the Vehicle and any related records or make them available to us in a reasonable manner.

Case: 17-03054    Doc# 1    Filed: 08/22/17    Entered: 08/22/17 16:47:32    Page 9 of 23

(d) Take back the Vehicle by legal process or self help, but in doing so, we may not breach the peace or violate the law;

(e) Use any other remedy available to us in this Lease or by law.

You agree that, subject to your right to recover such property, if any, we may take possession of personal property left in or on the Vehicle when we take back the Vehicle. We will hold the personal property for you and will send you written notice that we have it as may be required by law.

You agree to repay us for any reasonable amounts we pay to correct or cover your default or to protect the Vehicle from loss. You also agree to reimburse us for any reasonable costs and expenses we incur in the Vehicle's repossession and storage or resulting from early termination, unless prohibited by law. This amount includes, for example, the reasonable fees and cost we incur to recondition the Vehicle and prepare it for disposition. Unless prohibited by law, it will also include our court costs and reasonable attorneys' fees (including if the attorney is our salaried employee). Further, we shall recover from you interest at the rate of 18% per annum or at such lesser rate as may be permitted by law, on all expenses incurred by us and on all obligations which you owe to us in connection with or subsequent to termination of the lease

By choosing anyone or more of these remedies, we do not give up our right to use another remedy. By deciding not to use any remedy should this Lease be in default, we do not give up our right to use that remedy if the same kind of default happens again.

29. LEASE TERMINATION: This Lease will end ("terminate") when one of the following events occurs whichever happens first: (a) You choose to end the Lease early and return the Vehicle to us; (b) You choose to buy the Vehicle (if you have that option); (c) You return the Vehicle at the end of the scheduled Lease Term; (d) We terminate the Lease because the Vehicle is stolen and not recovered, or is lost or destroyed, or is damaged and we determine that it cannot or should not be repaired or replaced; (e) We terminate the Lease due to your default. On termination, you will pay the amounts agreed in this Lease. You are not entitled to keep the Vehicle past the end of the scheduled Lease Term or the date of early termination without our prior written consent.

30. EARLY TERMINATION: This section applies if the Lease terminates before the end of the scheduled Lease Term. Unless included in the purchase option price in section 38, this section does not apply if you choose to buy the Vehicle before the end of the scheduled Lease Term. On early termination, you will return the Vehicle to us. You will deliver it to our address or to another reasonable location at our request.

(a) Early Termination liability. On early termination, you agree to pay us:

(1) A VEHICLE RETURN FEE if any, (section 34(a));

(2) All accrued and unpaid amounts that are due or past due at that time (including amounts described in the REMEDIES section) and any other amounts arising from your failure to keep your promises under the Lease;

(3) The amount by which the "Adjusted Lease Balance" is greater than the "Realized Value" of the Vehicle. (If the Realized Value is greater than the Adjusted Lease Balance, this amount will be applied as a credit toward your liability) and;

(4) All official fees and taxes imposed in connection with the Lease termination.

(b) Determining the Adjusted Lease Balance. Your early termination liability under this section will be calculated using the "Adjusted Lease Balance." The Adjusted Lease Balance at the beginning of this Lease is equal to the Adjusted Capitalized Cost (section 10(c)). Reductions to the Adjusted Lease Balance are calculated using the actuarial method which is a method of allocating the Base Monthly Payments between (i) payment of a portion of the Rent Charge and (ii) the reduction of the Adjusted Lease Balance. The Rent Charge portion of any Base Monthly Payment is calculated by multiplying (a) the then Adjusted Lease Balance minus one Base Monthly Payment by (b) the constant rate which over the Lease Term reduces the Adjusted Lease Balance to the Vehicle's Residual Value (section 10(d)) by allocating each Base Monthly Payment as described in the next paragraph. These calculations are made on the assumption that all Base Monthly Payments are made on the exact due date and that each year has 12 months of 30 days each

Each Base Monthly Payment you make will be applied first to pay a portion of the Rent Charge which is earned and charged each month in a way that is similar to interest for loans. Section 10(f) gives the total Rent Charge that we will earn over the scheduled Lease Term

c) Determining the Realized Value. If the law so requires, we will send you a notice and wait any required period of time before taking action to establish the Vehicle's Realized Value.

If this Lease ends under section 26 because the Vehicle is a total loss due to its theft, loss or destruction, the Realized Value will be the amount of any insurance proceeds from your Required Insurance plus the amount of any deductible subtracted to determine the amount of the insurance proceeds. Otherwise, the Realized Value will be determined in one of the following ways: (1) by a written agreement between you and us reached within a reasonable time after the Vehicle is returned, (2) by the professional appraisal of an independent third party agreed to by you and us and obtained at your expense within a reasonable time after the Vehicle is returned. The appraisal shall be of the value that is realized at sale of the Leased property, and the appraisal shall be final and binding on both you and us; or (3) if the Realized Value is not determined by the preceding methods, then we will determine it by following accepted practices in the automobile industry for determining the wholesale value of used vehicles. If we sell the Vehicle, the Realized Value will be its sale price. If we do not sell the Vehicle, the Realized Value will be determined by reference to its whole sale value as reported in the

current edition of a recognized used vehicle value guide customarily used by California motor vehicle dealers. We will use the publication described in section 39. If the law requires us to use another method to determine the Realized Value, we use the method required

31. SCHEDULED TERMINATION: Unless this Lease ends under another section of this agreement, you will return the Vehicle to us on the last day of the scheduled Lease Term. You agree to return it to our address or to another reasonable location that we may request. You may return the Vehicle up to 15 days before the last day of the scheduled Lease Term at your option and for your own convenience, without any adjustment (charges or credits) for an "early" return

On termination under this section, you agree to pay us:
(a) A DISPOSITION FEE, if any, described in section 34(b) ,
(b) An EXCESS WEAR CHARGE and an EXCESS MILEAGE CHARGE, if any, described in the EXCESS WEAR AND MILEAGE section;
(c) All other amounts then due or past due under this Lease; and
(d) If Residual Value shown in paragraph 10(d) exceeds the Realized Value, the difference between the Residual Value and the Realized Value, subject to the "3 payment rule", described as follows: There is a rebuttable presumption that if the deficiency specified in this subsection (d) exceeds three monthly lease payments, the Residual Value is unreasonable and was not established in good faith. As a result, your liability under subsection (d) would be limited to the sum of three monthly lease payments – except for any difference which is due to unreasonable wear or use; or unless you agree at the end of the Lease term to make a higher payment; or unless we prove in a lawsuit for a higher payment that the Residual Value was a reasonable estimate of the Vehicle's likely end-of-term wholesale value at the time of Lease signing was made in good faith. Whether or not we prove that, we will pay your attorney's fees to the extent the difference is not due to unreasonable wear or use or unless you have entered into this lease primarily for agricultural, business or commercial purposes or you are a governmental agency or organization.

These amounts are due and payable at the time you return the Vehicle or as soon thereafter that they can be determined unless otherwise provided by law. You will also pay us for all reasonable losses and expenses we incur if you fail to return the Vehicle at the end of the scheduled Lease Term.

32. EXCESS WEAR AND MILEAGE: You may be charged for excessive wear based on our standards for normal use. You agree to keep the Vehicle in the same condition as when you received it, except for reasonable wear and mileage. You agree to repair or replace any excessive wear at your own expense during the Lease Term and prior to returning the Vehicle to us. When you return the Vehicle at the end of the scheduled Lease Term, you agree to pay an EXCESS WEAR CHARGE for any excessive wear to the Vehicle. The EXCESS WEAR CHARGE will be equal to the actual or estimated costs of repair, or the estimated loss in its value, because of any excessive wear (even if we do not repair the Vehicle).

Excessive wear includes
(a) mechanical damage, failure or defect, (b) exterior parts, grills, bumpers, trim, paint and glass that are dented, scratched, chipped, discolored or otherwise damaged, missing or worn beyond ordinary use, (c) interior parts, upholstery, dashboard, carpeting or trunk liner that are stained, torn, burned or otherwise damaged, missing or worn beyond ordinary use, (d) accessories, tools and equipment included with the Vehicle when delivered that are missing, damaged or not in proper working order (e) tires that are unsafe, have less than 1/8 inch tread at the shallowest point or are not a part of a matching set of four, (f) any other part or condition that causes the Vehicle to be unsafe or unlawful to use, (g) any other damage or wear that together cost more than $50 to repair or replace

We will notify you of the amount of these charges and provide any other related information as may be required by law. The charges will be due as soon as the amount is determined, unless otherwise provided by law.

Case: 17-03054    Doc# 1    Filed: 08/22/17    Entered: 08/22/17 16:47:32    Page 10 of 23

When you return the Vehicle at the end of the scheduled Lease Term, you agree to pay any EXCESS MILEAGE CHARGE as described in section 12. Excessive Wear and Use. You agree that the odometer will reflect the Vehicle's actual mileage when you return it. An EXCESS MILEAGE CHARGE will not be calculated under section 12 if the actual mileage cannot be determined because (a) the odometer is not working properly, or (b) there is evidence the odometer has been disconnected, changed or otherwise altered. Instead, the EXCESS WEAR CHARGE will reflect our estimate of the loss in the Vehicle's value due to the uncertainty of its actual mileage.

**33. ESTIMATED FEES AND TAXES:** The total ESTIMATED amount you will pay for official and license fees, registration, title and taxes over the entire term of the Lease whether included with your Monthly Payments or assessed otherwise is $ 35,575.20

**34. ADDITIONAL FEES AND CHARGES:** In addition to the other amounts promised in this Lease, you agree to pay the following: **(a) VEHICLE RETURN FEE:** You will pay us a Vehicle Return Fee of $ 6,560.84 if this Lease is terminated before the end of the Scheduled Lease Term. This fee will not apply if the Lease ends early or if you buy the Vehicle at the end of the Lease Term or if you have this option. **(b) DISPOSITION FEE:** You will pay us a Disposition Fee of $ 350.00 when you return the Vehicle at the end of the scheduled Lease Term. This fee will not apply if the Lease ends early or if you buy the Vehicle at the end of the Lease Term or if you lease that option. **(c) LATE CHARGE:** Unless prohibited, you will pay us a Late Charge of 5% of the monthly rental for any Monthly Payment that is not paid in full within 10 days after it is due.

**35. REQUIRED INSURANCE.** You agree to provide at least the following insurance coverage ("Required Insurance") on the Vehicle at all times during this Lease: **(a) LIABILITY** for bodily injury or death of others in an amount of at least $100,000 per person and $300,000 per occurrence; for property damage to others in an amount of at least $50,000; and **(b) COLLISION** and COMPREHENSIVE (including fire and theft coverage) with a deductible not to exceed $ 1,000.00 . You agree to provide the insurance at your own expense with a duly licensed insurer of your choice who is reasonably acceptable to us. This insurance may be provided through existing policies that you own or control. You also agree to name us or our assignee as loss payee and additional insured. The insurance policy must provide for at least 10 days advance notice to us of any cancellation or other material change in coverage. At our request, you will promptly provide us with written proof of insurance. You will promptly contact us in writing if any of the insurance provider information changes. You authorize us or our assignee to contact your insurance provider at any time during the Lease Term to verify the Vehicle's coverage.

**NOTICE:** Liability insurance coverage for bodily injury and motor vehicle damage caused to others is not included in this Lease.

**36. VOLUNTARY ADDITIONAL PROTECTIONS:** You may buy any of the following VOLUNTARY protection plans. They are NOT required as part of this Lease and will NOT be a factor in our decision to lease the Vehicle to you. **(a) SERVICE CONTRACT:** You may, but are not required to, purchase a Service Contract to cover N/A . The Service Contract will be in effect for and will provide up to N/A of coverage. The coverage charge is N/A . Your signature below means you want to purchase the described Service Contract for the stated additional cost which will be also we lease signing or delivery (section 9(a) or included as part of the Gross Capitalized Cost (section 15(1)). You acknowledge that you have received and reviewed a copy of the Service Contract. If no coverage or price is given above, you have declined any such coverage that we offered.

_____
Lessee Signature        Lessee Signature
Monica H. Hujazi

**(b) GAP WAIVER OR GAP COVERAGE:** You are liable for the early termination charges in section 30 if this Lease ends early because the Vehicle is a total loss due to its theft, loss or destruction. For such termination, the amount of insurance proceeds we receive from or through you for the Vehicle may not be enough to pay the early termination charges. This difference is generally referred to as the "GAP" amount.

You may, but are not require to purchase a GAP Waiver or GAP Coverage Contract ("GAP Product") to help cover the "GAP" amount, subject to the specific conditions and limitations in the separate GAP Product. The GAP Product will be in effect for the entire scheduled Lease Term and will provide up to N/A of coverage. The GAP Product fee is $ N/A .

Your signature below means you want to purchase the described GAP Waiver or GAP Coverage for the stated additional cost which will be due on Lease signing or delivery (section 9(a) or included as part of the Gross Capitalized Cost (section 15(1)). You acknowledge that you received and reviewed a copy of the GAP Waiver or GAP Coverage Contract. If no coverage or fee is given above, you have declined any such coverage that we offered.

_____
Lessee Signature        Lessee Signature

**37. WARRANTIES:** The Vehicle is subject to the following express warranties that apply to this Lease:
☒ (a) The standard written manufacturer's warranty. This warranty is made by the manufacturer and NOT by the Lessor
☐ (b) _____

By signing this Lease, you acknowledge receiving a copy of the above written warranties.

YOU UNDERSTAND THAT WE (THE LESSOR) MAKE NO EXPRESS OR IMPLIED WARRANTIES OTHER THAN THOSE DESCRIBED IN SUBSECTION (b) OF THIS SECTION (IF ANY), EXCEPT AS REQUIRED BY LAW. LESSOR MAKES NO IMPLIED WARRANTY OF MERCHANTABILITY AND NO WARRANTY THAT THE VEHICLE IS FIT FOR A PARTICULAR PURPOSE. EXCEPT AS PROVIDED ABOVE, YOU WILL TAKE THE VEHICLE "AS IS AND WITH ALL FAULTS".

**38. OPTION TO PURCHASE BEFORE THE END OF THE LEASE TERM:** You have the option to purchase the Vehicle any time after 3 months of this Lease as long as we have not declared the Lease to be in default. You must give us at least 30 days prior notice of your intent to purchase. The Vehicle price will be the sum of: the balance of all future and unpaid past due payments under the Lease, plus the Residual Value and all miscellaneous charges

**39. PRIMARY USE OF THE VEHICLE:** You intend to use the Vehicle primarily for personal, family or household purposes unless you initial below.

Lessee Initials _____   The Vehicle will be used primarily for business, business, commercial or agricultural purposes

**40. ENTIRE AGREEMENT:** This Lease contract contains your and our entire agreement. There are no unwritten agreements regarding this Lease contract. Any change to this Lease contract must be in writing and signed by you and by us.

_____
Lessee Signature        Lessee Signature

This Lease contract was negotiated primarily in the language initialed by the Lessee
English X  Spanish ___  Chinese ___  Tagalog ___  Korean ___  Vietnamese ___  Other ___

**41. NOTICE:** You have the right to return the vehicle, and receive a refund of any payments made if the credit application is not approved, unless non-approval results from an incomplete application or from incorrect information provided by you.

**42. LESSEE SIGNATURE(S):** YOU AGREE TO ALL THE PROVISIONS ON PAGES 1 THROUGH 4 OF THIS LEASE. YOU REPRESENT THAT YOU HAVE READ PAGES 1 THROUGH 4 OF THIS LEASE AND THAT THE INFORMATION IT CONTAINS IS TRUE AND CORRECT.

**YOU ACKNOWLEDGE THAT YOU RECEIVED A COMPLETELY FILLED IN COPY OF THIS AGREEMENT.**

_____   Date _____
Lessee Signature   Monica H. Hujazi

_____
Title (Business Lease)

_____   Date _____
Lessee Signature

_____
Title (Business Lease)

(1) Do not sign this lease before you read it or if it contains any blank spaces to be filled in; (2) You are entitled to a completely filled in copy of this lease; (3) Warning - Unless a charge is included in this lease for public liability or property damage insurance, payment for that coverage is not provided by this lease.

**43. LESSOR SIGNATURE:** By signing below, Lessor agrees to the terms and conditions of this Lease and provides. (a) Lessee ID. Inspection. The Lessor inspected each Lessee's driver's license and compared and verified the signature on each license with a signature of each Lessee, written in Lessor's presence. Lessor believes that each Lessee providing such information is currently licensed to drive by the state of his/her residence. (b) Assignment. Lessor assigns this Lease and all rights and title to the Vehicle to the Assignee identified below (if any).

Assignee Name:  All Points Capital Corp.
Address:        275 Broadhollow Road
                Melville NY 11747

Lessor: Manhattan Leasing Ent., Ltd

_____   Date _____
Signature

_____
Title

**44. LESSEE ACCEPTS DELIVERY:** You received the Vehicle described in the DESCRIPTION OF LEASED VEHICLE section (section 1) on today's date and have had a reasonable opportunity to inspect it. You acknowledge that it is in good condition and operating order and that it has all the additional equipment/options described in section 1.

_____   _____
Date                       Date

_____   _____
Lessee Signature           Lessee Signature
Monica H. Hujazi

Case: 17-03054   Doc# 1   Filed: 08/22/17   Entered: 08/22/17 16:47:32   Page 11 of 23

# EXHIBIT B



STATE OF CALIFORNIA
CERTIFICATION OF VITAL RECORD

# COUNTY OF SAN MATEO

### REDWOOD CITY, CALIFORNIA

CERTIFICATE OF LIVE BIRTH
STATE OF CALIFORNIA
USE BLACK INK ONLY

**1199741** 001482

| | STATE FILE NUMBER | | | | LOCAL REGISTRATION DISTRICT AND CERTIFICATE NUMBER | |
|---|---|---|---|---|---|---|
| **THIS CHILD** | 1A. NAME OF CHILD — FIRST (GIVEN)<br>Jacqueline | 1B. MIDDLE<br>Marie | | 1C. LAST (FAMILY)<br>Zuercher | | |
| | 2. SEX<br>Female | 9A. THIS BIRTH, SINGLE, TWIN, ETC.<br>Single | 3B. IF MULTIPLE, THIS CHILD 1ST, 2ND, ETC. | 4A. DATE OF BIRTH — MM/DD/CCYY<br>04/02/1997 | | 4B. HOUR — (24 HOUR CLOCK TIME)<br>2009 |
| **PLACE OF BIRTH** | 5A. PLACE OF BIRTH — NAME OF HOSPITAL OR FACILITY<br>Mills-Peninsula Health Services | | 5B. STREET ADDRESS — STREET, NUMBER, OR LOCATION<br>1783 El Camino Real | | | |
| | 5C. CITY<br>Burlingame | | 5D. COUNTY<br>San Mateo | | 5E. PLANNED PLACE OF BIRTH<br>Hospital | |
| **FATHER OF CHILD** | 6A. NAME OF FATHER — FIRST (GIVEN)<br>- | 6B. MIDDLE | 6C. LAST (FAMILY)<br>- | | 7. STATE OF BIRTH | 8. DATE OF BIRTH |
| **MOTHER OF CHILD** | 9A. NAME OF MOTHER — FIRST (GIVEN)<br>Monica | 9B. MIDDLE<br>Helena | 9C. LAST (MAIDEN)<br>Hujazi | | 10. STATE OF BIRTH<br>CA | 11. DATE OF BIRTH<br>05/06/1961 |
| **PARENT'S CERTIFI- CATION** | I CERTIFY THAT I HAVE REVIEWED THE STATED INFORMATION AND THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE. | 12A. PARENT OR OTHER INFORMANT — SIGNATURE<br>*Monica Hujazi* | | 12B. RELATIONSHIP TO CHILD<br>Mother | | 12C. DATE SIGNED<br>04/04/1997 |
| **CERTIFI- CATION OF BIRTH** | I CERTIFY THAT THE CHILD WAS BORN ALIVE AT THE DATE, HOUR AND PLACE STATED. | 13A. ATTENDANT OR CERTIFIER — SIGNATURE — DEGREE OR TITLE<br>*L.R. Drummond-Hay, MD* | | 13B. LICENSE NUMBER<br>G048640 | | 13C. DATE SIGNED<br>04/04/1997 |
| | 13D. TYPED NAME, TITLE AND MAILING ADDRESS OF ATTENDANT<br>Leslie Drummond-Hay, M.D., 1828 El Camino Real, #705, Burlingame. | | | 14. TYPED NAME AND TITLE OF CERTIFIER IF OTHER THAN ATTENDANT | | |
| **LOCAL REGISTRAR** | 15A. DATE OF DEATH | 15B. STATE FILE NO. (STATE USE ONLY) | 16. LOCAL REGISTRAR — SIGNATURE | | 17. DATE ACCEPTED FOR REGISTRATION<br>04/08/1997 | |

192359

CERTIFIED COPY OF VITAL RECORDS

STATE OF CALIFORNIA }
COUNTY OF SAN MATEO } SS

DATE ISSUED **JAN 1 3 2000**

This is a true and exact reproduction of the document officially registered and placed
on file in the office of the San Mateo County Assessor-County Clerk-Recorder



WARREN SLOCUM
Assessor-County Clerk-Recorder
San Mateo County

Case 17-03054   Doc# 1   Filed: 08/22/17   Entered: 08/22/17 ... Page 13 of 23



# EXHIBIT C



# EAST WEST BANK

## OUTGOING WIRE FUNDS TRANSFER REQUEST

Date of Wire: ~~03/06/2013~~  03/07/13

### WIRE AMOUNT/SOURCE

**SELECT ONE**   WIRE DESTINATION/CURRENCY TYPE *

☒ DOMESTIC WIRE (U.S. Dollars)

☐ INTERNATIONAL WIRE

_____ Indicate Currency Type

**AMOUNT TO WIRE** *

$ 13,400

Provide amount in the "Currency Type" indicated

**REPETITIVE WIRE ID #** *

NOTE: For Repetitive Wires, where instructions are on file with Bank, complete ONLY those fields with an asterisk *

FOREIGN CURRENCY EXCHANGE RATE SOURCE (If Applicable)
☐ If OVER US $25,000 equivalent contact 1-(888) 819-8893 for a rate quote ☞

| Rate Source: | ☐ RATE SHEET | ☐ FX DESK |

FX Rate: _____   Value Date: _____

Quoted By: _____   USD Equivalent $: _____
*(Trader's Name)*

Reference #: _____

**ACCOUNT NUMBER / SOURCE OF FUNDS**

☒ W/D FROM ACCOUNT #: ██████████

☐ CASH - Credited by Branch to GL 242830/cc 510
*(Prior Risk & Operations approval required if over branch limit)*

☐ CHECK - Credited by Branch to GL 242830/cc 510
*(Prior Risk Management approval required if over branch limit)*

### ORIGINATOR INFORMATION *

**ORIGINATOR'S NAME** *

Sf Corners LLC

**ORIGINATOR'S CONTACT PHONE NUMBER** *

650-346-4408

### PAYMENT INSTRUCTIONS

**WIRE TO** RECEIVING BANK'S NAME

Citibank

**CREDIT TO** ACCOUNT NAME

Manhattan Leasing Enterprises Ltd.

**RECEIVING BANK'S ADDRESS**

New York, NY 10043

**CREDIT TO ACCOUNT NUMBER**

██████████

International Wires ONLY: ☐ check here ONLY if this is a USD account

FURTHER CREDIT TO ACCOUNT NUMBER (If Applicable)

*(If foreign bank address, please include both CITY and COUNTRY information.)*

**RECEIVING BANK'S ABA** *(for domestic)* or SWIFT Number *(for international)*

021000089

FURTHER CREDIT TO ACCOUNT NAME (If Applicable)

**MESSAGE OR REFERENCE** *

RECIPIENT'S NAME, ADDRESS, PHONE NUMBER

### ORIGINATOR'S AUTHORIZATION *

By Signing below, I agree to the terms accompanying this form. *

_(signature)_   _(signature)_   March 7, 2013

(Originator's Signature)   (Date)   (Originator's Signature)   (Date)

### ☮ BANK USE ☮

**ORIGINATOR'S ID and TIN INFORMATION** *

☒ Driver's License  ☐ Passport  ☐ Green Card

☐ Other: _____

Issued By: CA

Serial Number: N9521507

Tax ID Number: 45-3841451

**REQUEST TYPE / CALLBACK RESULTS**

☒ In Person  ☐ Letter (Attached)  ☐ Phone*  ☐ FAX*  ☐ E-Mail* ☞

No FTA Form - Approval By: _____
*(Printed Name - approving Branch Manager or Risk & Operations Employee.)*

☐ Callback Completed w/Auth Customer   ☐ No Callback (FTA Waiver)

Authorized Customer's Name: _____

Callback/FTA Verified By: _____
*(Printed Name & Initials - employee who completed callback or verified FTA waiver.)*

* Phone / FAX / E-Mail Requests - 1.) MUST adhere to Bank callback requirements; and 2.) MUST have a Funds Transfer Designation and Authorization (FTA) on file. If NO FTA is on file, the request must be approved by the Branch Manager (up to $200,000) OR Risk & Operations (if over $200,000)!

**FEE AMOUNT**

$ 25.00

### BRANCH/DEPARTMENT USE ONLY

INSTRUCTIONS ACCEPTED BY (Printed Name & Signature)

Selena Jiang

| Date Accepted | Time Accepted | Test Key Reference Number | Test Key Result Number |
| 3/7/13 | 12:18 ☐ A.M. ☐ P.M. | | 8618 |

Dept./Branch Name or #

8618

SUPERVISOR/AUTHORIZED EMPLOYEE APPROVAL (2nd signature required if over limit)
*(Verification of request form, cust. ID, payment method, request type and customer's authority as an authorized account signer.)*

Approval Signature: _____

"Over Limit" Approval Signature (as required by policy): _____

Printed Name REQUIRED   Printed Name REQUIRED

### WIRE DEPARTMENT USE ONLY

WIRED BY (Printed Name & Signature)

VERIFIED BY (Printed Name)

CALLBACK VERIFICATION BY (Printed Name)

| (Verified With – Printed Name) | DATE WIRE EXECUTED |

WIRE2012.DOC / Rev. 09-2012

Case: 17-03054   Doc# 1   Filed: 08/22/17   Entered: 08/22/17 16:47:32   Page 15 of 23

# EXHIBIT D



**REGISTRATION CARD VALID FROM: 03/02/2007 TO: 03/02/2008**

| MAKE | YR MODEL | YR 1ST SOLD | VLF CLASS | *YR | TYPE VEH | TYPE LIC | LICENSE NUMBER |
|------|----------|-------------|-----------|-----|----------|----------|----------------|
| MERZ | 2006 | 2006 | MA | 2007 | 120 | 11 | 5ZYZ696 |

| BODY TYPE MODEL | MP | MO | | VEHICLE ID NUMBER |
|-----------------|-----|-----|---|-------------------|
| CP | G | NX | | WDDAJ76FX6M001024 |

| TYPE VEHICLE USE | DATE ISSUED | CC/ALCO | DT FEE RECVD | PIC | STICKER ISSUED |
|------------------|-------------|---------|--------------|-----|----------------|
| AUTOMOBILE | 10/04/07 | 41 | 10/04/0.7 | 2 | L9189878 |

PR EXP DATE: 03/02/2007

REGISTERED OWNER
MANHATTAN LSG ENT LTD LSR
HUJAZI MONICA LSE
1616 SAN RAYMUNDO

AMOUNT PAID
$ 1965.00

AMOUNT DUE      AMOUNT RECVD
$ 1965.00   CASH :
            CHCK :
HILLSBOROUGH
CA          94010      CRDT :  1965.00

LIENHOLDER
ALL POINTS CAPITAL CORP
275 BROADHOLLOW RD

MELVILLE
NY          11747

F01  625 A2 0196500 0032 CS  F01 100407 11  5ZYZ696 024

Case: 17-03054   Doc# 1   Filed: 08/22/17   Entered: 08/22/17 16:47:32   Page 17 of 23



UTO    03/02/2009 TO 03/02/2010    11   5ZYZ696

VEHICLE IDENTIFICATION NUMBER
WDDAJ76FX6M001024
BODY TYPE MODEL    CP
DATE ISSUED    06/01/2009

DATE FIRST SOLD    00/00/2006    CLASS MA    2007 2006
                                           MERZ

TYPE YEAR 120    G    TOTAL FEES PAID $3105
                                           4100

REGISTERED OWNER

MANHATTAN LSG ENT LTD LSR
HUJAZI MONICA LSE
1016 SAN RAYMUNDO RD
HILLSBOROUGH  CA 94010-6656

LIENHOLDER

ALL POINTS CAPITAL CORP
275 BROADHOLLOW RD
MELVILLE                          R0056
                                  L1847
0   NY            11747
                  RI705292009700

STATE OF CALIFORNIA
DEPARTMENT OF MOTOR VEHICLES
VALIDATED REGISTRATION CARD    W 7478
READ REVERSE SIDE - IMPORTANT INSTRUCTIONS

ISD 83VR (REV. 9/2010)



**STATE OF CALIFORNIA**
**DMV**
DEPARTMENT OF MOTOR VEHICLES
A Public Service Agency

 *Find out ? how much*



## NONOPERATED VEHICLE NOTICE

| LICENSE NUMBER | |
|---|---|
| **5YZY696** | |
| YR MODEL | MAKE |
| 2006 | MERZ |

☞ ## THIS IS NOT A BILL. PLEASE READ THE FOLLOWING INFORMATION ☜

 Our records show that you have reported that this vehicle is not in operation. **If your vehicle will continue to be stored and not operated, parked or towed on the streets or highways, disregard this notice and pay no fees.** The vehicle will retain its previous expiration date and nonoperated status.

 Before operating, parking, or towing this vehicle on the streets or highways during the registration period of **03/02/2011 to 03/02/2012, renew** the registration by mailing the fees and documents indicated below, with the bottom portion of this form.

☞ **Pay the appropriate fees\***

✉ **Return by MAIL only**

| FEES | |
|---|---|
| REGISTRATION FEE | $57 |
| LICENSE FEE (May be an income tax deduction) | $2450 |
| WEIGHT FEE | $0 |
| SPECIAL PLATE FEE | $0 |
| COUNTY/DISTRICT FEES | $14 |
| OWNER RESPONSIBILITY FEE | $0 |
| SMOG ABATEMENT FEE | $20 |
| **TOTAL DUE PRIOR TO OPERATION** | **$2541** |

| LATE PAYMENT | |
|---|---|
| | Total due |
| If paid 1 to 10 days after operation | $2806 |
| If paid 11 to 30 days after operation | $3061 |
| If paid 31 to 365 days after operation | $4071 |

\*Note: Your vehicle's month and day of expiration will not change when fees are paid

**DETACH AND RETURN**

— For DMV Use Only
— Change of Address (see back)
— For DMV Use Only

040101  05353435060906  0254100  06110001000000
00050204000  0000153000  16036998 68

3511111A  C120710P01    33811  P30001

| LICENSE NUMBER | MAKE |
|---|---|
| 5YZY696 | MERZ |
| VIN | |
| WDDAJ76FX6M001024 | |
| DMV USE | DUE DATE | AMOUNT DUE |
| | 03/02/2011 | $2541 |

**MAKE PAYMENT TO:**

MANHATTAN LSG ENT LTD LSR
HUJAZI MONICA LSE
1016 SAN RAYMUNDO RD
HILLSBOROUGH CA 94010-6656

DMV RENEWAL
P.O. BOX 942897
SACRAMENTO CA 94297-0897

0401010535343506090602541000611000100000000502040000001530001603699868

Case: 17-03054   Doc# 1   Filed: 08/22/17   Entered: 08/22/17 16:47:32   Page 19 of 23

FACE OF THIS DOCUMENT HAS A SECURITY FEATURE

**CALIFORNIA INSURANCE IDENTIFICATION CARD**

Safeco Insurance

**COMPANY**
**AMERICAN STATES PREFERRED INSURANCE COMPANY**

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| A2449749 | NOV. 9 2011 | MAY 9 2012 |

| YEAR | MAKE/MODEL | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|
| 2006 | MERCEDES | WDDAJ76FX6M001024 |

**AGENCY/COMPANY ISSUING CARD**
PENNBROOK/CAIB INS SERVICES
1-866-472-3326
PO BOX 26849
SAN FRANCISCO     CA     94126-0849

**INSURED**
MONICA HUJAZI
1016 SAN RAYMUNDO RD
HILLSBOROUGH CA 94010-6656

**VEHICLE REGISTRATION COPY**

CN-7042/EP 12/08

PERFORATIONS.

E INSURED VEHICLE
HER SHOULD BE PRESENTED
DEPARTMENT
E REGISTRATION.

876

USD 5-NR (REV. 3/2011)

A Public Service Agency

# NONOPERATED VEHICLE NOTICE

| LICENSE NUMBER |
|---|
| 5ZYZ696 |

| YR MODEL | MAKE |
|---|---|
| 2006 | MERZ |



## THIS IS NOT A BILL. PLEASE READ THE FOLLOWING INFORMATION



Our records show that this vehicle is on Non-Operation Status. **If your vehicle will continue to be stored and not operated, parked, or towed on the streets or highways, the vehicle will retain its non-operational status** with the previous expiration date. **Please disregard this notice and pay no fees.**

Before operating, parking, or towing this vehicle on the streets or highways during the registration period of **03/02/2012 to 03/02/2013, renew** the registration by mailing the fees and documents indicated below with the bottom portion of this form. If you wish to operate the vehicle prior to **03/02/2012, additional fees will be due.**

**Pay the appropriate fees\***

**Evidence of Liability Insurance** (See reverse side of notice)

**Smog Certification** (See reverse side of notice)

**Return by MAIL only**

| FEES | |
|---|---|
| REGISTRATION FEE | $69 |
| LICENSE FEE (May be an income tax deduction) | $1154 |
| WEIGHT FEE | $0 |
| SPECIAL PLATE FEE | $0 |
| COUNTY/DISTRICT FEES | $24 |
| OWNER RESPONSIBILITY FEE | $0 |

| TOTAL DUE PRIOR TO OPERATION | $1247 |
|---|---|

| LATE PAYMENT | Total due |
|---|---|
| If paid 1 to 10 days after operation | $1382 |
| If paid 11 to 30 days after operation | $1508 |
| If paid 31 to 365 days after operation | $1999 |

DETACH AND RETURN

\*Note: Your vehicle's month and day of expiration will not change when fees are paid

POSTED

Case: 17-03054    Doc# 1    Filed: 08/22/17    Entered: 08/22/17 16:47:32    Page 21 of 23

# EXHIBIT E

# MANHATTAN LEASING

### ENTERPRISES LTD.

February 14 2013

Monica H. Hujazi
1016 San Raymundo
Hillsborough, CA 94010

Dear Miss Hujazi,

The payoff for your 2006 MERCEDES BENZ SLR MCLAREN VIN#
WDDAJ76FX6M001024 is as follows: The Balance Due after your last payment on
October 31 2012 is $17,862.84 and is good for funds received by wire by the close of
business on March 2 2013. After payment, you will own this vehicle free and clear.

Sincerely

Mel Steinberg
Manhattan Leasing Ent. Ltd.

3275 W. Hillsboro Blvd Deerfield Beach, FL 33442 (516) 568-2300 FAX (516) 568-2440